## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LCT OPCO LLC and CHOBANI, LLC; | Case No.:  2:26-cv-1443 |
| Plaintiffs, | |
| v. | **JURY TRIAL DEMANDED** |
| TALOR HUTCHINSON, INC. d/b/a JUST THE MAIL; | |
| Defendant. | |

## COMPLAINT

Plaintiffs LCT OpCo LLC ("La Colombe") and Chobani, LLC ("Chobani," and together with La Colombe collectively, "Plaintiffs"), by and through their undersigned attorneys, for their Complaint against Defendant Taylor Hutchinson, Inc. d/b/a Just the Mail ("Defendant"), state as follows:

### PRELIMINARY STATEMENT

1.      In June 2025, La Colombe entered into an Exclusive Supply Agreement (the "Agreement") with the Defendant, hoping that the Defendant could open a successful café selling its coffee in Boca Raton, Florida. Under the terms of the Agreement, La Colombe would provide coffee brewing and serving equipment in exchange for Defendant purchasing its coffee products from La Colombe. La Colombe would also provide materials bearing La Colombe's trademarks: marketing materials provided by La Colombe, and sales and marketing materials produced by or on behalf of the Customer that have been approved in writing in advance by La Colombe. But the Defendant wanted more. So it emblazoned its front window with one of La Colombe's registered trademarks, mounted a banner with La Colombe's and Chobani's

trademarked names over its front entrance, used La Colombe's name and trademarks in its social media and on its website, and decorated its walls with La Colombe's trademarked name and designs. When La Colombe gave the Defendant an opportunity to cure its contract-breaching unauthorized use of its trademarks, the Defendant refused and started fabricating stories and levying baseless allegations against La Colombe and its employees. La Colombe terminated the Agreement in light of the Defendant's failure to cure its breaches, but the Defendant has continued to use – or at least indulge use of – La Colombe's trademarks. Even today, it is infringing La Colombe's trademarks on its website.

## NATURE OF THE ACTION

2.      This is an action for trademark infringement under the Lanham Act, 15 U.S.C. §§ 1114 and 1125, breach of contract, replevin, and violation of the Florida Deceptive and Unfair Trade Practices Act. Specifically, the Defendant has infringed U.S. Trademark Reg. Nos. 7,612,628; 4,681,893; 4,722,624; 4,497,085; 7,486,383; 6,989,835; and 4,642,042. Plaintiffs seek damages, return of certain specified equipment, injunctive relief, attorneys' fees, and any further relief the Court deems just and proper.

## THE PARTIES

3.      LCT OpCo LLC is a Pennsylvania limited liability company with its principal place of business at 2620 E. Tioga Street in Philadelphia, Pennsylvania 19134.

4.      Chobani, LLC is a Delaware limited liability company with its principal place of business at 669 County Road 25 in New Berlin, New York 13411.

5.      Taylor Hutchinson, Inc. is Florida corporation with its principal place of business at 3581 N. Federal Highway in Boca Raton, Florida 33431. It has registered to do business at that address under the fictitious name "Just the Mail."

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the subject matter over the Plaintiffs' Lanham

Act claims pursuant to 28 U.S.C. §§ 1331 and 1338 because they arise under an Act of Congress

relating to trademarks. It has jurisdiction over Plaintiffs' claims for breach of contract and state

law causes of action pursuant to 28 U.S.C. § 1367 because they are so related to the Plaintiffs'

Lanham Act claims in this action that they form part of the same case or controversy.

7.      This Court has jurisdiction over the person of the Defendant because, among

other reasons, it entered into the Agreement, pursuant to which it agreed that any suit arising

thereunder would be brought in a court with jurisdiction over Philadelphia, Pennsylvania.[1] *See*

42 Pa. Cons. Stat. § 5322(a)(1). In addition, this Court has  jurisdiction over the person of the

Defendant because it has caused harm or tortious injury by an act or omission outside this

Commonwealth. 42 Pa. Cons. Stat. § 5322(a)(4).

8.      Venue in this District is proper under 28 U.S.C. §1391(b) because the parties

agreed that this would be the proper venue for resolution of any claims arising under the

Agreement and because the Defendant is subject to personal jurisdiction in this District.

## THE PLAINTIFFS AND THEIR BUSINESSES

**A.      La Colombe**

9.      La Colombe started with a single café in Philadelphia, Pennsylvania in 1994.

From the beginning, it carefully crafted its coffee, brand, trademarks, and goodwill to honor the

founders' spirit of warmth, hospitality, and exploration. La Colombe coffee is served at some of

---

[1] Despite the clear language of the Agreement, Plaintiffs have filed an action in the Southern District of Florida asserting the same claims. Plaintiffs believe that the Southern District of Florida may prove to be more convenient venue for resolution of the asserted claims.

America's finest restaurants, and La Colombe has opened coffeehouses across the country to share its bold, better-made coffee with everyone.

10.    Given the importance of high-quality coffee and service to La Colombe, it has diligently ensured that its name and trademarks would be associated with well-brewed coffee. That is why, for example, the Agreement required the Defendant to purchase all of its coffee products from La Colombe and for the coffee to be brewed and prepared on coffee equipment supplied by La Colombe.

11.    The high quality of La Colombe's coffee and service has come to be associated with its federally registered trademarks.

12.    La Colombe owns the word mark LA COLOMBE (the "LA COLOMBE Trademark"), registered as U.S. Reg No. 7,612,628 in International Class 30 for "coffee, tea, coffee beans, ground coffee, ground coffee beans" and registered as U.S. Reg. No. 4,681,893 in International Class 21 for "beverageware, namely, coffee mugs, cups, shot glasses, and water glasses." A true and correct copy of the Registration Certificate for U.S. Reg No. 7,612,628 is attached hereto as **Exhibit A**. A true and correct copy of the Registration Certificate for U.S. Reg No. 4,681,893 is attached hereto as **Exhibit B**.

13.    La Colombe owns the following mark:



(the "LA COLOMBE COFFEE ROASTERS DESIGN Trademark") which is registered as U.S. Reg. No. 4,722,624 in International Class 35 for "online and retail store services featuring household goods, namely, beverageware and online and retail store services featuring food and

beverages." A true and correct copy of the Registration Certificate for U.S. Reg No. 4,722,624 is attached hereto as **Exhibit C**.

14.    La Colombe owns the following mark:



(the "DOVE DESIGN Trademark") which is registered as U.S. Reg. No. 4,497,085 in International Class 30 for "coffee." A true and correct copy of the Registration Certificate for U.S. Reg No. 4,497,085 is attached hereto as **Exhibit D**.

15.    La Colombe owns the word mark DRAFT LATTE (the "DRAFT LATTE Trademark"), registered as U.S. Reg No. 7,486,383 in International Class 30 for "coffee based beverages." A true and correct copy of the Registration Certificate for U.S. Reg No. 7,486,383 is attached hereto as **Exhibit E**.

**B.    Chobani**

16.    Chobani is a food maker with a mission of making high-quality and nutritious food accessible to more people, while elevating communities and making the world a healthier place. In support of this mission, it is a values-driven, people-first, food-and-wellness-focused company, and has been since Hamdi Ulukaya, an immigrant to the U.S., founded the company in 2005. Chobani produces yogurt, oatmilk, and dairy creamers. Chobani yogurt is America's No. 1 yogurt brand.

17.    Chobani also operates a café in New York City at which LA COLOMBE® is served.

18.    Like La Colombe, Chobani has diligently ensured that its name and trademarks would be associated with high-quality and nutritious food and beverages. The high quality of Chobani's food and beverages has come to be associated with Chobani's federally registered trademarks.

19.    For example, Chobani owns the word mark CHOBANI (the "CHOBANI Trademark"), registered as U.S. Reg No. 6,989,835 in International Class 30 for "coffee based beverages" and registered as U.S. Reg No. 4,642,042 in International Class 43 for "providing a website featuring information in the field of cooking and recipes; restaurant services; cafe services."  A true and correct copy of the Registration Certificate for U.S. Reg No. 6,989,835 is attached hereto as **Exhibit F**. A true and correct copy of the Registration Certificate for U.S. Reg No. 4,642,042 is attached hereto as **Exhibit G**.

## THE DEFENDANT AND THE ACTIONS LEADING TO THIS CASE

### A.    The Defendant

20.    On information and belief, the Defendant was incorporated under Florida law on September 1, 2022 under the name CoEd-Health Inc. On information and belief, on May 23, 2023, it changed its name to Taylor Hutchinson, Inc. The only officer disclosed in its articles of incorporation and annual reports is David Cutler, who serves as President, Treasurer, Secretary, and Director.

21.    On information and belief, since no later than April 25, 2024, the Defendant has operated under the fictitious name "Just the Mail." On information and belief, as of no later than June 12, 2024, the Defendant was operating Just the Mail from its current location at 3581 N.

Federal Highway in Boca Raton, Florida and has operated Just the Mail at that location continuously since then.

22.     Just the Mail holds itself out to the public as "the go-to resource for packing, shipping, printing and business service needs of the residents and businesses of Boca Raton, FL." At some point, however, the Defendant decided it wanted to operate a coffee shop and café at the Just the Mail location.

**B.     Defendant's Breaches of the Agreement, Infringement**
**of Plaintiffs' Trademarks, and Unfair Competition**

23.     On June 25, 2025, the Defendant entered into the Agreement with La Colombe. Under the Agreement, La Colombe delivered coffee-making equipment to the Defendant for use in making coffee. The Defendant was not required to pay for the use of the equipment (which was owned at all times by La Colombe), but in exchange the Defendant was required to purchase its coffee products from La Colombe at prices set in the Agreement.

24.     Among other terms, the Defendant was permitted to use La Colombe's trademarks while the Agreement was in effect, but only in limited ways. The Defendant's use of those trademarks was limited to marketing materials provided by La Colombe, and sales and marketing materials produced by or on behalf of the Customer that have been approved in writing in advance by La Colombe. The Defendant was not permitted to use La Colombe's trademarks in any other way and was not permitted to use Chobani's trademarks at all under the Agreement.

25.     The Defendant exceeded the scope of use of La Colombe's trademarks permitted under the Agreement. Among other things, it promoted its business using La Colombe's trademarks in social media, on its website, in decorating the café, on the front window of the café, and on a banner hung above the front of the café. It also used Chobani's trademark without

consent to promote its café. On information and belief, the Defendant knew it was not permitted to use La Colombe's and Chobani's trademarks in those manners and knowingly and intentionally infringed those trademarks.

26.     For example, on December 2, 2025, the Defendant posted the following image on its Instagram account (justthemailbr):



In that image, the Defendant's use of both La Colombe's and Chobani's federally registered trademarks can be seen on the banner above the front of the café. The Defendant's use of La Colombe's federally registered stylized design trademark can also be seen on the front window.

27.     The Defendant posted numerous other images on its Instagram account that used La Colombe's federally registered trademarks outside the scope of the Agreement. As shown in the attached screenshot from the Defendant's Instagram account (justthemailbr), the Defendant

not only used La Colombe's trademarks in its café and posts, it actually referred to the café as "La Colombe Coffee Roasters of Boca Raton":



28.    The Defendant also used La Colombe's federally registered trademarks on its website, in a manner beyond the scope permitted by the Agreement. The landing page of the website (https://cozy-bean-haven-site.lovable.app/#) identifies the café as "La Colombe Boca Raton – Located Inside Just the Mail":



29.    On the "About" page of the Defendant's website (https://cozy-bean-haven-site.lovable.app/#about), it shows the front window of the café with La Colombe's federally registered trademark. It also describes "our story" in a manner wholly inconsistent with the Defendant, and in a manner that makes Defendant appear as if it is an actual La Colombe-owned café by identifying itself as celebrating "15+ Years of Excellence" when the Defendant was founded less than four years ago and "1M+ Happy Customers" when the café was open only several months.  Further, the phrase "Coffee House Quality for All" – a La Colombe mission statement that is found on its own website – is also copied and used by Defendant.



30.    After multiple requests from La Colombe, the Defendant took down the banner that infringed La Colombe's and Chobani's trademarks. But the Defendant refused to remove the other infringing uses of La Colombe's trademarks, despite La Colombe informing the Defendant that those uses were not permitted under the Agreement. The Defendant's continued use of La Colombe's trademarks after receiving notice that it was not permitted to do so constitutes knowing and intentional infringement of La Colombe's trademarks.

31.    On January 7, 2026, La Colombe provided notice to the Defendant (specifically, Mr. Cutler and Jeffey Govberg) of the Defendant's ongoing breaches of the Agreement through display and use of La Colombe's trademarks. La Colombe indicated that the Agreement would be terminated if the Defendant did not cure the breaches within the contractually mandated 30-day cure period.

32.    Mr. Cutler responded to the notice of breach later the same day. He indicated that Mr. Govberg would address the breaches, but further stated, "My only comment is all of our Instagram has stopped 3 weeks ago. Whatever is in the 'can' or people are reposting we cannot control. Everything we can control we have removed."

33.    Mr. Cutler's representation regarding the Defendant's Instagram account (justthemailbr) was not true. Defendant's Instagram account continued to infringe La Colombe's trademarks until at least February 23, 2026, more than a month after Mr. Cutler's message. On information and belief, Mr. Cutler's statement was knowingly and intentionally false and made in an attempt to prevent La Colombe from enforcing its rights.

34.    Mr. Govberg never addressed the Defendant's breaches. Instead, as the deadline for cure approached, Mr. Cutler sent a letter to a La Colombe employee on February 4, 2026 purportedly "exercising our rights to terminate [the Agreement] with cause." Under the Agreement, the Defendant had no such right to terminate without permitting potential cure. Mr. Cutler's letter also failed to comport with the notice requirements under the Agreement.

35.    In his February 4, 2026 letter, Mr. Cutler asserted that La Colombe:

required all marketing materials and social media to be removed before discussion with the marketing department could take place. Everything was taken down in December, which resulted in zero sales.

That was not true. The Just the Mail location continued to display La Colombe's trademarks to promote its business in an infringing manner, the Defendant's Instagram account continued to promote the Defendant's business using La Colombe's and Chobani's trademarks in an infringing manner, and the Defendant's website continued to promote the Defendant's business using La Colombe's trademarks in an infringing manner. On information and belief, Mr. Cutler's statement was knowingly and intentionally false and made in an attempt to prevent La Colombe from enforcing its rights.

36.    Mr. Cutler's letter further stated:

Due to the elimination of our marketing and social media, we were forced to shut down and sell our location specifically created for a coffee shop selling La Colombe coffee resulting in losses exceeding $250,000 . . . .

That also was not true. Again, neither the Defendant's Instagram account nor its website was eliminated and both continued to promote the Defendant's business using La Colombe's and Chobani's trademarks in an infringing manner. In addition, a coffee shop continues to operate in the Just the Mail location even today.

37.     On February 11, 2026, La Colombe sent the Defendant (specifically, Mr. Cutler) a letter terminating the Agreement. The letter demanded that the Defendant comply with the terms of the Agreement upon termination, including returning the coffee making equipment that had been loaned to the Defendant under the Agreement and making payments required by the Agreement. In addition, the letter demanded that the Defendant cease and desist from use of La Colombe's trademarks.

38.     The following day, February 12, 2026, Mr. Cutler responded to La Colombe's termination letter. After setting forth grievances, he stated:

> All the above points are mute [*sic*] because we gave notice to La Colombe pursuant to the terms of the agreement that we were voiding the agreement with cause and closing our store.
>
> The store after the letter of rescission was sent, was turned over to a new operator with the understanding there is NO La Colombe agreement and they are on their own. The store has undergone massive renovation, and the name is changed to Cafe Louis. If you google La Colombe Boca Raton the listing now comes up as Cafe Louis. The picture attached to your letter is AI generated and is not what really exists in real life.

39.     Although Mr. Cutler's statement that Defendant's prior correspondence had the effect of "voiding the agreement" is incorrect, the February 12, 2026 letter made it clear that the Defendant understood that it no longer had any rights under the Agreement.

40.     The Defendant agreed (in the Agreement) that it would discontinue the use of and destroy or return, as directed by La Colombe, any advertising or other materials bearing any of La Colombe's Trademarks upon the termination of the Agreement. It has not done so. The

failure to do so constitutes a continuing breach of the Defendant's obligations under the Agreement.

41.    The Defendant agreed (in the Agreement) that it would cease using the coffee making equipment and immediately return the equipment in the same condition as received, normal wear and tear alone excepted, to La Colombe, at its principal place of business, all at the Defendant's sole cost. It has not done so. The failure to do so constitutes a continuing breach of the Defendant's obligations under the Agreement.

42.    The Defendant agreed (in the Agreement) that it would pay an early termination fee within fifteen days of the termination of the Agreement. It has not done so. The failure to do so constitutes a continuing breach of the Defendant's obligations under the Agreement.

43.    Under the Agreement, the Defendant had an obligation to notify La Colombe immediately of any change of control. To the extent that Mr. Cutler's statement that operation of the coffee shop "was turned over to a new operator" is truthful, his letter indicates that the Defendant had failed to do so. The failure to do so constitutes a continuing breach of the Defendant's obligations under the Agreement.

**D.    The Defendant's Continuing Trademark Infringement and Unfair Competition**

44.    Mr. Cutler's February 12, 2026 letter was also incorrect in stating that the store had undergone massive renovation to the extent that such a renovation would have removed the LA COLOMBE COFFEE ROASTERS DESIGN Trademark from the front window or other La Colombe trademarks from the interior.

45.    Mr. Cutler's February 12, 2026 letter was also incorrect in asserting that a Google search for "La Colombe Boca Raton" would not return the Defendants' infringing use of La

Colombe's and Chobani's trademarks, including on the Defendant's Instagram account and webpage.

46.     Mr. Cutler's February 12, 2026 letter was also incorrect in asserting that the photograph included in La Colombe's February 11, 2026 letter (showing the LA COLOMBE COFFEE ROASTERS DESIGN Trademark on the front window of the Just the Mail location) was "AI generated and not what really exists in real life." On information and belief, Mr. Cutler's statements were knowingly and intentionally false and made in an attempt to prevent La Colombe from enforcing its rights.

47.     To the contrary of Mr. Cutler's assertions, even a Google search for "Café Louis Boca Raton" revealed that the linked website was the same website promoting La Colombe Boca Raton inside Just the Mail (as shown in paragraphs 28-29 above).

48.     Although the coffee shop within the Defendant's premises at Just the Mail had allegedly been renamed Café Louis, the online presence of the coffee shop made it clear that it was continuing to infringe La Colombe's trademarks and compete unfairly. For example, even in promotional posts for Café Louis, it identified itself as La Colombe Coffee & Espresso:



49.    In addition, in responses to Google reviews, it held itself out to be La Colombe Coffee & Espresso Café Boca Raton:





50.     Images posted in relation to views of the alleged Café Louis within the

Defendant's premises also continued to show infringement of La Colombe's trademarks:

 

51.     In telephone communications, La Colombe informed Mr. Cutler that the

Defendant's Google reviews, Instagram account (justthemailbr), and website continued to

infringe La Colombe's trademarks. La Colombe expressly requested that the infringing materials

be taken down. After several days, the Defendant took down its Instagram account. However, the Defendant still has not altered its website or Google reviews, Mapquest description (as "proudly serving La Colombe Beans"), or other posts. By failing to remedy its pervasive infringement of La Colombe's trademarks in spite of being fully informed, the Defendant has willfully infringed La Colombe's trademarks.

52.    On information and belief, the Defendant's actions have been undertaken with the intent of trading on La Colombe's outstanding reputation and deceiving consumers into believing that its goods and services come with the highest standards and quality that La Colombe and its coffee represent.

53.    The Defendant has asserted that it transferred control over the operation of the coffee shop to another entity, but refuses to identify who that entity is or who owns it. On information and belief, no good faith transfer of the Defendant's premises or operations have occurred and the Defendant continues to operate the coffee shop in Just the Mail.

54.    In the alternative, if the Defendant has actually transferred its assets and operation related to the coffee shop to a third party, on information and belief, the Defendant is aware of the operator's infringement of La Colombe's trademarks on the Defendant's premises and has done nothing to stop it. Having been alerted by La Colombe, the Defendant is aware of the infringement of La Colombe's trademarks in the marketplace that the Defendant has provided and is willfully refusing to investigate or stop it. On information and belief, the Defendant is intentionally indulging infringement of La Colombe's trademarks.

## COUNT I
### Trademark Infringement under the Lanham Act
### (15 U.S.C. § 1114 – LA COLOMBE)

55.    Plaintiffs repeat and reallege the allegations of Paragraphs 1–54 as if fully set forth herein.

56.    La Colombe is the exclusive owner of the LA COLOMBE Trademark.

57.    La Colombe owns federal registrations for the LA COLOMBE Trademark, including U.S. Registration Nos. 4,681,893 and 7,612,628.

58.    The LA COLOMBE Trademark has been used continuously in interstate commerce since at least as early as 1994.

59.    The LA COLOMBE Trademark is valid and enforceable.

60.    Without La Colombe's authorization, the Defendant has used in commerce marks that are identical to the LA COLOMBE Trademark in connection with goods and services identical and/or substantially similar to the products and services offered by La Colombe under the LA COLOMBE Trademark.

61.    The Defendant's actions constitute direct infringement of the LA COLOMBE Trademark.

62.    On information and belief, without La Colombe's authorization, the Defendant has induced or facilitated the infringing conduct of others and engaged in contributory trademark infringement.

63.    Defendant's conduct is likely to cause forward, reverse, and/or post-sale confusion among the relevant customers and potential customers for related products, or to cause mistake, or to deceive consumers.

64.    Defendant's conduct has caused and, unless enjoined by this Court, will continue to cause irreparable harm to La Colombe, La Colombe's reputation, and to La Colombe's goodwill in the LA COLOMBE Trademark.

65.    At all times, Defendant's conduct has been wanton, malicious, willful, and intended to cause confusion among consumers and to capitalize on La Colombe's goodwill in the LA COLOMBE Trademark, and with actual or constructive knowledge of the LA COLOMBE trademark.

66.    La Colombe has no adequate remedy at law.

67.    Defendant's conduct is in violation of 15 U.S.C. § 1114(1).

68.    Defendant has caused and is likely to continue causing substantial irreparable injury to the public and to La Colombe; therefore, La Colombe is entitled to injunctive relief and to recover Defendant's profits, actual damages, disgorgement of Defendant's profits, enhanced profits and damages, costs, and reasonable attorney's fees under 15 U.S.C. §§ 1114, 1116, and 1117.

## COUNT II
### Trademark Infringement under the Lanham Act
### (15 U.S.C. § 1114 – CHOBANI)

69.    Plaintiffs repeat and reallege the allegations of Paragraphs 1–54 as if fully set forth herein.

70.    Chobani is the exclusive owner of the CHOBANI Trademark.

71.    CHOBANI owns federal registrations for the CHOBANI Trademark, including U.S. Registration Nos. 6,989,835 and 4,642,042.

72.    The CHOBANI Trademark has been used continuously in interstate commerce since at least as early as 2018.

73.    The CHOBANI Trademark is valid and enforceable.

74.    Without Chobani's authorization, the Defendant has used in commerce marks that are identical to the CHOBANI Trademark in connection with goods and services identical and/or

substantially similar to the products and services offered by Chobani under the CHOBANI
Trademark.

75.    The Defendant's actions constitute direct infringement of the CHOBANI
Trademark.

76.    On information and belief, without Chobani's authorization, the Defendant has
induced or facilitated the infringing conduct of others and engaged in contributory trademark
infringement.

77.    Defendant's conduct is likely to cause forward, reverse, and/or post-sale
confusion among the relevant customers and potential customers for related products, or to cause
mistake, or to deceive consumers.

78.    Defendant's conduct has caused and, unless enjoined by this Court, will continue
to cause irreparable harm to Chobani, Chobani's reputation, and to Chobani's goodwill in the
CHOBANI Trademark.

79.    At all times, Defendant's conduct has been wanton, malicious, willful, and
intended to cause confusion among consumers and to capitalize on Chobani's goodwill in the
CHOBANI Trademark, and with actual or constructive knowledge of the CHOBANI trademark.

80.    Chobani has no adequate remedy at law.

81.    Defendant's conduct is in violation of 15 U.S.C. § 1114(1).

82.    Defendant has caused and is likely to continue causing substantial irreparable
injury to the public and to Chobani; therefore, Chobani is entitled to injunctive relief and to
recover Defendant's profits, actual damages, disgorgement of Defendant's profits, enhanced
profits and damages, costs, and reasonable attorney's fees under 15 U.S.C. §§ 1114, 1116, and
1117.

<u>COUNT III</u>
**Trademark Infringement under the Lanham Act**
**(15 U.S.C. § 1114 – LA COLOMBE COFFEE ROASTERS DESIGN)**

83.     Plaintiffs repeat and reallege the allegations of Paragraphs 1–54 as if fully set forth herein.

84.     La Colombe is the exclusive owner of the LA COLOMBE COFFEE ROASTERS DESIGN Trademark.

85.     La Colombe owns federal registrations for the LA COLOMBE COFFEE ROASTERS DESIGN Trademark, including U.S. Registration No. 4,722,624.

86.     The LA COLOMBE COFFEE ROASTERS DESIGN Trademark has been used continuously in interstate commerce since at least as early as 2011.

87.     The LA COLOMBE COFFEE ROASTERS DESIGN Trademark is valid and enforceable.

88.     Without La Colombe's authorization, the Defendant has used in commerce marks that are identical to the LA COLOMBE COFFEE ROASTERS DESIGN Trademark in connection with goods and services identical and/or substantially similar to the products and services offered by La Colombe under the LA COLOMBE COFFEE ROASTERS DESIGN Trademark.

89.     The Defendant's actions constitute direct infringement of the LA COLOMBE COFFEE ROASTERS DESIGN Trademark.

90.     On information and belief, without La Colombe's authorization, the Defendant has induced or facilitated the infringing conduct of others and engaged in contributory trademark infringement.

91.     Defendant's conduct is likely to cause forward, reverse, and/or post-sale confusion among the relevant customers and potential customers for related products, or to cause mistake, or to deceive consumers.

92.     Defendant's conduct has caused and, unless enjoined by this Court, will continue to cause irreparable harm to La Colombe, La Colombe's reputation, and to La Colombe's goodwill in the LA COLOMBE COFFEE ROASTERS DESIGN Trademark.

93.     At all times, Defendant's conduct has been wanton, malicious, willful, and intended to cause confusion among consumers and to capitalize on La Colombe's goodwill in the LA COLOMBE COFFEE ROASTERS DESIGN Trademark, and with actual or constructive knowledge of the LA COLOMBE COFFEE ROASTERS DESIGN trademark.

94.     La Colombe has no adequate remedy at law.

95.     Defendant's conduct is in violation of 15 U.S.C. § 1114(1).

96.     Defendant has caused and is likely to continue causing substantial irreparable injury to the public and to La Colombe; therefore, La Colombe is entitled to injunctive relief and to recover Defendant's profits, actual damages, disgorgement of Defendant's profits, enhanced profits and damages, costs, and reasonable attorney's fees under 15 U.S.C. §§ 1114, 1116, and 1117.

## <u>COUNT IV</u>
### Trademark Infringement under the Lanham Act
### (15 U.S.C. § 1114 – DOVE DESIGN)

97.     Plaintiffs repeat and reallege the allegations of Paragraphs 1–54 as if fully set forth herein.

98.     La Colombe is the exclusive owner of the DOVE DESIGN Trademark.

99.     La Colombe owns federal registrations for the DOVE DESIGN Trademark, including U.S. Registration No. 4,497,085.

100.    The DOVE DESIGN Trademark has been used continuously in interstate commerce since at least as early as 2010.

101.    The DOVE DESIGN Trademark is valid and enforceable.

102.    Without La Colombe's authorization, the Defendant has used in commerce marks that are identical to the DOVE DESIGN Trademark in connection with goods and services identical and/or substantially similar to the products and services offered by La Colombe under the DOVE DESIGN Trademark.

103.    The Defendant's actions constitute direct infringement of the DOVE DESIGN Trademark.

104.    On information and belief, without La Colombe's authorization, the Defendant has induced or facilitated the infringing conduct of others and engaged in contributory trademark infringement.

105.    Defendant's conduct is likely to cause forward, reverse, and/or post-sale confusion among the relevant customers and potential customers for related products, or to cause mistake, or to deceive consumers.

106.    Defendant's conduct has caused and, unless enjoined by this Court, will continue to cause irreparable harm to La Colombe, La Colombe's reputation, and to La Colombe's goodwill in the DOVE DESIGN Trademark.

107.    At all times, Defendant's conduct has been wanton, malicious, willful, and intended to cause confusion among consumers and to capitalize on La Colombe's goodwill in the

DOVE DESIGN Trademark, and with actual or constructive knowledge of the DOVE DESIGN trademark.

108.    La Colombe has no adequate remedy at law.

109.    Defendant's conduct is in violation of 15 U.S.C. § 1114(1).

110.    Defendant has caused and is likely to continue causing substantial irreparable injury to the public and to La Colombe; therefore, La Colombe is entitled to injunctive relief and to recover Defendant's profits, actual damages, disgorgement of Defendant's profits, enhanced profits and damages, costs, and reasonable attorney's fees under 15 U.S.C. §§ 1114, 1116, and 1117.

## COUNT V
### Trademark Infringement under the Lanham Act
### (15 U.S.C. § 1114 – DRAFT LATTE)

111.    Plaintiffs repeat and reallege the allegations of Paragraphs 1–54 as if fully set forth herein.

112.    La Colombe is the exclusive owner of the DRAFT LATTE Trademark.

113.    La Colombe owns federal registrations for the DRAFT LATTE Trademark, including U.S. Registration No. 7,486,383.

114.    The DRAFT LATTE Trademark has been used continuously in interstate commerce since at least as early as 2016.

115.    The DRAFT LATTE Trademark is valid and enforceable.

116.    Without La Colombe's authorization, the Defendant has used in commerce marks that are identical to the DRAFT LATTE Trademark in connection with goods and services identical and/or substantially similar to the products and services offered by La Colombe under the DRAFT LATTE Trademark.

117.    The Defendant's actions constitute direct infringement of the DRAFT LATTE Trademark.

118.    On information and belief, without La Colombe's authorization, the Defendant has induced or facilitated the infringing conduct of others and engaged in contributory trademark infringement.

119.    Defendant's conduct is likely to cause forward, reverse, and/or post-sale confusion among the relevant customers and potential customers for related products, or to cause mistake, or to deceive consumers.

120.    Defendant's conduct has caused and, unless enjoined by this Court, will continue to cause irreparable harm to La Colombe, La Colombe's reputation, and to La Colombe's goodwill in the DRAFT LATTE Trademark.

121.    At all times, Defendant's conduct has been wanton, malicious, willful, and intended to cause confusion among consumers and to capitalize on La Colombe's goodwill in the DRAFT LATTE Trademark, and with actual or constructive knowledge of the DRAFT LATTE Trademark.

122.    La Colombe has no adequate remedy at law.

123.    Defendant's conduct is in violation of 15 U.S.C. § 1114(1).

124.    Defendant has caused and is likely to continue causing substantial irreparable injury to the public and to La Colombe; therefore, La Colombe is entitled to injunctive relief and to recover Defendant's profits, actual damages, disgorgement of Defendant's profits, enhanced profits and damages, costs, and reasonable attorney's fees under 15 U.S.C. §§ 1114, 1116, and 1117.

**<u>COUNT VI</u>**
**Unfair Competition and False Designation of Origin under the Lanham Act**

**(15 U.S.C. § 1125)**

125.    Plaintiffs repeat and reallege the allegations of Paragraphs 1–54 as if fully set forth herein.

126.    By misappropriating and using the Plaintiffs' trademarks, the Defendant misrepresents and falsely describes to the general public the origin, source, affiliation, sponsorship, or relationship of its products and services and create a likelihood of confusion by consumers as to the source of such merchandise and services and the relationship, affiliation, sponsorship partnership, and/or connection between the Plaintiffs' products and services and the Defendant's infringing products and services, as well as between the Plaintiffs and the Defendants.

127.    Because the Defendant's products and services are the same exact types of goods as the Plaintiffs' products and services, the Defendant's use of identical trademarks is also likely to cause confusion, deception, and mistake by creating the false and misleading impression that the Defendant's goods and services are sold or offered for sale by the Plaintiffs; or that the goods and services are affiliated, connected, associated, or authorized with or by the Plaintiffs, or have the Plaintiffs' sponsorship, endorsement, or approval; or that the Plaintiffs' goods and services are sold or offered for sale by the Defendant; or that the Plaintiffs' goods and services are affiliated, connected, associated, or authorized with or by the Defendant, or have the Defendant's sponsorship, endorsement, or approval.

128.    The Defendant's conduct constitutes the use of symbols or devices tending falsely to describe the their infringing products and services, within the meaning of 15 U.S.C. § 1125(a).

129.    The Defendants' conduct has caused, and unless enjoined by this Court will continue to cause, a likelihood of reverse, forward, and/or post-sale consumer confusion and

deception of members of the general purchasing public, and injury to the Plaintiffs' goodwill and reputation as symbolized by their trademarks, for which the Plaintiffs have no adequate remedy at law.

130.    At all times, the Defendant's conduct has been wanton, malicious, willful, and intended to cause confusion among consumers and to capitalize on the Plaintiffs' goodwill in their trademarks, and with actual or constructive knowledge of the Plaintiffs' trademarks.

131.    The Defendant has caused and is likely to continue causing substantial irreparable injury to the public and to Plaintiffs; therefore, the Plaintiffs are entitled to injunctive relief and to recover Defendant's profits, actual damages, disgorgement of the Defendant's profits enhanced profits and damages, costs, and reasonable attorney's fees under 15 U.S.C. §§ 1114, 1116, and 1117.

**<u>COUNT VII</u>**
**Breach of Contract**

132.    Plaintiffs repeat and reallege the allegations of Paragraphs 1–54 as if fully set forth herein.

133.    The Agreement constitutes a valid and enforceable agreement.

134.    The Agreement states that it shall be construed in accordance with the substantive laws of the Commonwealth of Pennsylvania.

135.    La Colombe performed all of its duties and obligations under the Agreement.

136.    The Defendant breached the Agreement by, among other things, using La Colombe's trademarks beyond the permitted scope of the Agreement, failing to inform La Colombe of a change of control of the Defendant, failing to return the coffee-making equipment, and failing to pay the early termination fee under the Agreement.

137.    The Defendant's breaches of contract are the direct and proximate cause of harm to La Colombe. La Colombe has suffered damages directly attributable to the Defendant's breaches.

## COUNT VIII
### Replevin

138.    Plaintiffs repeat and reallege the allegations of Paragraphs 1–54 as if fully set forth herein.

139.    La Colombe is the owner of coffee-making equipment that was loaned to the Defendant under the Agreement. Specifically, the Defendant was loaned the following equipment owned by La Colombe:

- One La Spaziale Professional Coffee Machine S9 EK Compact-220v

- One Mazzer Super Jolly V Up Electronic Espresso Grinder

- One Bunn 23001.0017 CWTF15-APS Airpot Coffee Brewer

- Four Bunn 36725.0000, 3.8 L Stainless Steel Lined Lever Action Airpots

- One Swanson RTD (BF LACOLO-46)

Under the Agreement, the Defendant was obligated to return such property to La Colombe immediately upon termination of the Agreement.

140.    La Colombe has the exclusive right of immediate possession of the identified property.

141.    To the best of La Colombe's knowledge, information, and belief, the value of such property is approximately $5,000. To the best of La Colombe's knowledge, information, and belief, the property is in the possession of the Defendant at 3581 N. Federal Highway in Boca Raton, Florida 33431.

142.    The identified property is being wrongfully detained by the Defendant, who came into possession thereof solely through being loaned the property for purposes of carrying out its contractual rights and obligations under the terms of the Agreement. To the best of its knowledge, information, and belief, La Colombe is unaware of any good faith cause for the Defendant's detention of the property.

143.    La Colombe has good title and right to possession of the identified property.

144.    The claimed property has not been taken for a tax, assessment, or fine pursuant to law.

145.    The property has not been taken under an execution or attachment against the property of La Colombe.

146.    La Colombe is entitled to a writ of replevin to recover said personal property and any damages sustained by reason of the wrongful taking or detention as herein provided.

<u>**COUNT IX**</u>
**Violation of Florida Deceptive and Unfair Trade Practices Act**

147.    Plaintiffs repeat and reallege the allegations of Paragraphs 1–54 as if fully set forth herein.

148.    The Defendant has violated the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.20 et seq.

149.    The FDUTPA generally prohibits "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce," including practices in restraint of trade. Florida Stat. § 501.204(1).

150.    The primary policy of the FDUTPA is "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or

unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Florida Stat. § 501.202(2).

151.    A claim for damages under the FDUTPA has three elements: (1) a prohibited practice; (2) causation; and (3) actual damages.

152.    The Defendant, by its actions described above, has engaged in unfair and deceptive acts or practices in violation of FDUTPA. For example, as discussed above, the Defendant has knowingly used the LA COLOMBE, CHOBANI, LA COLOMBE COFFEE ROASTERS DESIGN, DOVE DESIGN, or DRAFT LATTE Trademarks beyond the scope of Plaintiffs' authorizations.

153.    As a direct and proximate cause of the Defendant's unlawful conduct, Plaintiffs have suffered reputational and economic damages, lost product sales, damage to Plaintiffs' reputation with its retail customers, and other damages to Plaintiffs' business.

154.    On information and belief, the Defendant's actions have created confusion among the public and allowed the Defendant to charge higher prices by leveraging the Plaintiffs' trademarks, thereby causing injury to consumers through higher prices in violation of the Florida Deceptive and Unfair Trade Practice Act. Accordingly, the Defendant's conduct was an unfair method of competition, and an unfair or deceptive act or practice within the conduct of commerce within the State of Florida.

155.    As a result of the Defendant's deceptive and unfair conduct, the Plaintiffs have suffered and will continue to suffer damages, including actual damages, in an amount to be determined at trial.

156.    By reason of the foregoing, the Plaintiffs are entitled to seek all forms of relief, including injunctive relief pursuant to Florida Stat. §501.208 and declaratory judgment, actual damages, reasonable attorneys' fees and costs pursuant to Florida Stat. § 501.211.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray for judgment against the Defendant as follows:

1.    That Defendant, its affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be permanently enjoined and restrained from the following acts in the United States or in any other manner that affects U.S. commerce:

a.    using any of the LA COLOMBE, CHOBANI, LA COLOMBE COFFEE ROASTERS DESIGN, DOVE DESIGN, or DRAFT LATTE Trademarks or any reproduction, counterfeit copy, or colorable imitation thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product or services that is not a genuine product or service of Plaintiffs;

b.    committing any acts calculated to cause consumers to believe that Defendant's infringing products or services are sold or provided under the authorization, control, or supervision of the Plaintiffs, or are sponsored by, approved by, or otherwise connected with the Plaintiffs;

c.    further infringing any of the LA COLOMBE, CHOBANI, LA COLOMBE COFFEE ROASTERS DESIGN, DOVE DESIGN, or DRAFT LATTE Trademarks and damaging the Plaintiffs' goodwill;

d.    infringing, inducing infringement, and/or contributing to the infringement of any of the LA COLOMBE, CHOBANI, LA COLOMBE COFFEE ROASTERS DESIGN,

DOVE DESIGN, or DRAFT LATTE Trademarks, including shipping, delivering, holding for sale, distributing, returning, transferring or otherwise moving, storing or disposing of in any manner products or inventory covered by any of the LA COLOMBE, CHOBANI, LA COLOMBE COFFEE ROASTERS DESIGN, DOVE DESIGN, or DRAFT LATTE Trademarks, or any reproductions, counterfeit copies, or colorable imitations of any of the LA COLOMBE, CHOBANI, LA COLOMBE COFFEE ROASTERS DESIGN, DOVE DESIGN, or DRAFT LATTE Trademarks.

2.    For items that are located in the United States or that have been distributed or used in any manner in U.S. commerce, directing that Defendant deliver for destruction all such products, and labels, signs, prints, packages, and advertisements relating thereto in their possession or under their control bearing any of the LA COLOMBE, CHOBANI, LA COLOMBE COFFEE ROASTERS DESIGN, DOVE DESIGN, or DRAFT LATTE Trademarks, and variations thereof or any simulation, reproduction, counterfeit, copy, or colorable imitation of any of the LA COLOMBE, CHOBANI, LA COLOMBE COFFEE ROASTERS DESIGN, DOVE DESIGN, or DRAFT LATTE Trademarks;

3.    That Defendant, within ten days after service of judgment with notice of entry thereof upon it, be required to file with the Court and serve upon Plaintiffs a written report under oath setting forth in detail the manner in which Defendant has complied with any and all injunctive relief ordered by this Court;

4.    That, upon Plaintiffs request, those in privity with Defendant and those with notice of the injunction, including any Internet search engines, webstore hosts, e-commerce platforms, or their administrators that are provided with notice of the injunction, cease facilitating access to any or all webstores through which Defendant engages in the sale of infringing products or services;

5.     That Defendant account for and pay to Plaintiffs all profits realized by Defendant by reason of Defendant's unlawful acts herein alleged, and that the amount of damages for infringement of the LA COLOMBE, CHOBANI, LA COLOMBE COFFEE ROASTERS DESIGN, DOVE DESIGN, or DRAFT LATTE Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

6.     That La Colombe be awarded damages sufficient to compensate it for the damages caused by the Defendant's breaches of the Agreement;

7.     That the Court issue a writ of replevin for the coffee-making equipment identified herein;

8.     That Plaintiffs be awarded actual and punitive damages for Defendant's willful acts of deceptive practices under Florida law;

9.     That Plaintiffs be awarded its reasonable attorneys' fees and costs;

10.     That Plaintiffs be awarded pre-judgment and post-judgment interest on damages caused by Defendant's infringing activities and other conduct complained of herein; and

11.     That Plaintiffs be awarded any and all other relief that this Court deems just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38, Plaintiffs hereby demand a trial by jury as to all issues so triable.

Dated: March 5, 2026

**LIPPES MATHIAS LLP**

/s Brendan H. Little
Brendan H. Little, Esq.
Attorneys for Plaintiffs
50 Fountain Plaza, Suite 1700
Buffalo, NY 14202
T: 716-853-5100
F: 716-853-5199
E: blittle@lippes.com